Jonathan O. Hafen (6096)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
jhafen@parrbrown.com

R. Jeremy Adamson (12818)
Taylor J. Hadfield (17224)
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, 10th Floor
Salt Lake City, UT 84101
Telephone: (801) 994-4646
Fax: (801) 758-7436
jadamson@kba.law
thadfield@kba.law

| |
|---|
| **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.** |

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RIKKI JAMES, an individual and as Guardian for JAMES MINOR 1, JAMES MINOR 2, JAMES MINOR 3, and JAMES MINOR 4[1]; CALANDRA JAMES, an individual; PRISCILLA AMBUNDO, an individual and as Guardian for AMBUNDO MINOR 1; ESTHER GONZALEZ, an individual and as Guardian for GONZALEZ MINOR 1, GONZALEZ MINOR 2, and GONZALEZ MINOR 3; AIMEE LLOYD, an individual and as Guardian for LLYOD MINOR 1; CHEYENNE WARE, an individual as Guardian for WARE MINOR 1; MATTIE ALLGYER, an individual and as Guardian for MATTIE ALLGYER MINOR 1; LINDA ALLGYER, as an individual and Guardian for LINDA ALLGYER MINOR 1; SEEGAL | **COMPLAINT**<br><br>Case No. 2:24-cv-00522<br><br>Judge: _____<br><br>**Tier 3** |

---

[1] All minors identified in this action are being identified with pseudonyms to protect their privacy.

MOSES, an individual; LISA SPIEGEL, an individual; AMANDA ALLEN, an individual; STACEY NOREN, an individual; HEATHER GEISINGER, an individual,

       Plaintiffs,

vs.

IMONEY TOOLS, LLC, a Utah limited liability company and dba TRANONT,

       Defendant.

Plaintiffs Rikki James ("**Rikki**"), Calandra James ("**Calandra**"), Priscilla Ambundo ("**Priscilla**"), Esther Gonzalez ("**Esther**"), Aimee Lloyd ("**Aimee**"), Cheyenne Ware ("**Cheyenne**"), Mattie Allgyer ("**Mattie**"), Linda Allgyer ("**Linda**"), Seegal Moses ("**Seegal**"), Lisa Spiegel ("**Lisa**"), Amanda Allen ("**Amanda**"), Stacey Noren ("**Stacey**"), and Heather Geisinger ("**Heather**") (collectively "**Plaintiffs**") hereby complain against defendant iMoney Tools, LLC dba Tranont ("**Tranont**") and allege as follows:

## **INTRODUCTION**

1.      This action arises from Tranont's flagrant disregard for the health of its customers after it was put on notice of the toxicity of its products.

2.      Specifically, Tranont manufactured, advertised, and sold products that it knew or should have known contained dangerous levels of toxins.

3.      This action is not the first time Tranont has been confronted with the toxicity of its product—just last year it settled a case in California arising from that toxicity and agreed that it would maintain rigorous testing standards to ensure toxins were not present in its products.

4.      Despite previous lawsuits and awareness of the dangers its product contained, Tranont persisted in marketing and selling its products to young families across the United States—including Plaintiffs.

5.      Plaintiffs are a group of young families that were poisoned by extreme amounts of heavy metals in Tranont's product.

## PARTIES JURISDICTION AND VENUE

6.      Plaintiff Rikki James is an individual residing in Midlothian, Texas, and the Guardian for James Minor 1, James Minor 2, James Minor 3 and James Minor 4.

7.      Plaintiff Calandra James is an individual residing in Midlothian, Texas.

8.      Priscilla Ambundo is an individual residing in Shelby, Michigan, and the Guardian for Ambundo Minor 1.

9.      Plaintiff Esther Gonzalez is an individual residing in Shelby, Michigan, and the Guardian for Gonzalez Minor 1, Gonzalez Minor 2, and Gonzalez Minor 3.

10.     Plaintiff Aimee Lloyd is an individual residing in Georgetown, Delaware, and the Guardian for Lloyd Minor 1.

11.     Plaintiff Cheyenne Ware is an individual residing in Evanston, Wyoming, and the Guardian for Ware Minor 1.

12.     Plaintiff Mattie Allgyer is an individual residing in Manheim, Pennsylvania, and the Guardian for Mattie Allgyer Minor 1.

13.     Plaintiff Linda Allgyer is an individual residing the Sinks Grove, West Virginia, and the Guardian for Linda Allgyer Minor 1.

14.     Plaintiff Seegal Moses is an individual residing in Vista, California.

15.    Plaintiff Lisa Spiegel is an individual residing in Winnetka, California.

16.    Plaintiff Amanda Allen is an individual residing in Atascadero, California.

17.    Plaintiff Stacey Noren is an individual residing in Campbell River, British Columbia.

18.    Plaintiff Heather Geisinger is an individual residing in Sioux Rapids, Iowa.

19.    Defendant iMoney Tools, LLC is a Utah limited liability company, its principal place of business in Utah County, Utah.

20.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and all Plaintiffs are diverse from Tranont.

21.    This Court has personal jurisdiction over Tranont because Tranont is a limited liability company registered in Utah with its principal place of business in Utah County, Utah.

22.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Tranont operates in Utah County and is at home in this venue.

<u>GENERAL ALLEGATIONS</u>

*Tranont's Multilevel Marketing Business Model.*

23.    Tranont is a multi-level marketing company that offers a variety of products and services purportedly aimed at promoting health, wellness, and financial well-being.

24.    Tranont's product line includes dietary supplements, skincare products, essential oils, and financial services.

25.    Tranont markets its products as "safe and effective" and it claims that, when those products are used as directed, they will "help create a balanced, healthy environment in the belly."

26.     Like other multi-level marketing companies, Tranont operates on a direct sales model, where independent distributors, often referred to as "associates," sell products and recruit new members to join the sales network.

27.     The associates earn commissions based on sales made by themselves and their downline, creating the potential for multiple levels of compensation.

***Tranont Already Admitted Fault in a California Lawsuit and Agreed to Implement Rigrous Testing of its Product.***

28.     Tranont was sued in California in 2021 by a non-profit seeking relief under California's Health and Safety Code (the "**California Lawsuit**").

29.     Specifically, Plaintiff Environmental Research Center, Inc. ("**ERC**"), a non-profit corporation, brought suit against IMoney Tools LLC, individually and dba Tranont for numerous violations of provisions of the California Health and Safety Code section 25249.5 e*t seq.*

30.     ERC alleged that a number of products manufactured, distributed, or sold by Tranont contained lead and/or mercury—chemicals listed under the California Health and Safety Code as carcinogens and/or reproductive toxins.

31.     Under California law, products sold to consumers with those chemicals require a warning, and Tranont failed to meet this requirement.

32.     The products subject to the lawsuit were: (1) Tranont Nourish GOS Prebiotic Meal Replacement Coconut Cream (lead), (2) Tranont Nourish GOS Prebiotic Meal Replacement Brown Batter (lead), (3) Tranont Boost (lead), (4) Tranont Glow Advanced Type 1 Collagen with Superfood Antioxidant Support Strawberry Banana (mercury), and (5) Tranont Glow Advance Type 1 Collagen with Superfood Antioxidant Support Orange Cream (mercury) (the "**Tranont Products**").

33.     To resolve the claims raised against it, in March 2023, Tranont entered into a Stipulated Consent Judgment in the California State Superior Court (the "**Settlement**").

34.     Tranont is now permanently enjoined from manufacturing, distributing, or selling in California, any Tranont Product that exposes a person to a "Daily Lead Exposure Level" of more than 0.5 micrograms of lead per day and/or "Daily Mercury Exposure Level" of more than 0.3 micrograms of mercury per day unless it meets the warning requirements under Proposition 65.

35.     Critically, Tranont is also required to "arrange for lead and mercury testing of Tranont Products at least once a year for a minimum of five consecutive years by arranging for testing of three (3) randomly selected samples of each of the [Covered] Products, in the form intended for" sale or distribution to a consumer in California.

***Plaintiffs and Their Families Experienced Significant Physical and Mental Health Issues after Ingesting Tranont Products as Directed.***

36.     Plaintiffs and their children each experienced significant health impacts directly attributable to the consumption and use of Tranont Products.

37.     Specifically, the following individuals were directly impacted by Tranont's products:

**(i)     Rikki James**

37.     Rikki, along with her children James Minor 1 ("**James Minor 1**"), James Minor 2 ("**James Minor 2**"), James Minor 3 ("**James Minor 3**"), and James Minor 4 ("**James Minor 4**"), each suffered profound and lasting harm due to the Tranont Products.

38.     In March 2021, Rikki was introduced to the Tranont Products through a friend's Facebook post, which claimed the Products were "super clean and 100% natural."

39.     Rikki began using the Products in April 2021, purchasing "welcome packs" for her family at a cost of $500-$1000.

40.     At the time, Rikki was pregnant and in good health, without any physical ailments. She was not on any medications.

41.     Rikki consumed multiple Tranont Products daily, particularly collagen and shakes, following Tranont's recommendations for "collagen loading" and increased shake consumption. This regimen included five different bottled products, collagen three times a day, and shakes two to four times a day.

42.     After using the Tranont Products for a year, Rikki experienced severe and persistent side effects, including weight retention, joint inflammation, premature graying of hair, and difficulty breastfeeding her baby, James Minor 1. Additionally, James Minor 3 has suffered from nosebleeds ever since taking the Products.

43.     On information and belief, James Minor 1 was poisoned through Rikki's breast milk as a result of her own consumption of the Tranont Products.

44.     Rikki stopped using the Tranont Products in November 2022 and later discovered the presence of heavy metal issues in Tranont Products in February 2023.

45.     A hair analysis performed on Rikki revealed dangerously high levels of minerals and heavy metals, directly correlated to her use of the Tranont Products.

46.     Rikki incurred thousands of dollars in out-of-pocket treatments for herself and her children.

47.     Without health insurance, she has faced financial ruin, losing nearly $20,000 monthly.

48.    The impact on Rikki's children has also been devastating, both physically and mentally. Each of her children who consumed the Tranont Products experienced severe dental decay, exhibiting similar deterioration patterns.

49.    In late 2022, Rikki began noticing severe behavioral and dental issues, including significant tooth decay and uncontrollable rage fits.

50.    Medical interventions have been extensive and costly for each child: (1) James Minor 4 had three molars extracted and several filled; (2) James Minor 2 and James Minor 3 also required significant dental work; and (3) James Minor 1, who was breastfed while Rikki consumed the Tranont Products, required major dental surgery at just two years old, involving the extraction of her front four teeth, four caps on her molars, and four fillings.

51.    The diagnosis for her children includes lead toxicity, which poses lifelong neurological risks as well as issues with the bones and teeth where lead is stored.

52.    Above and beyond the momentous cost of the medical expenses over the last year, Rikki has been gaslit by Tranont for voicing her concerns with Tranont Products.

53.    Specifically, during the past year, Tranont slandered her name, issued threats, and threatened legal action to silence her.

54.    Despite months of questioning the owner and leaders about the ingredients and sourcing, she never received satisfactory answers.

**(ii)    Calandra James**

55.    Calandra had endured severe and lasting damages from consumption of the Tranont Products.

56.     In April 2021, Calandra started using the Products she ordered from Tranont's website.

57.     Calandra used multiple products, and her regimen included: collagen, shakes, focus, enrich, and mojo. She took the Products that came in capsules seven to eight times a week, and the shakes with mojo seven to fourteen times a week.

58.     Calandra started experiencing adverse side effects in the last part of 2021. She suffered from weight gain, severe depression, brain fog, extreme hair loss, inflammation, and multiple cavities. Her mental health deteriorated and became difficult to manage as well. The side effects were persistent and continued for months.

59.     In January 2023, Calandra stopped using the Tranont Products because she learned of the lead poisoning in the Products.

60.     Calandra has sought medical attention and continues to struggle with severe depression as a result of consuming the Products.

**(iii)     Priscilla Ambundo**

61.     Priscilla, her husband Jason Ambundo ("**Jason**"), and their child, Ambundo Minor 1 ("**Ambundo Minor 1**"), have endured severe and lasting consequences due to the Tranont Products.

62.     In May 2021, Priscilla and Jason started using the Tranont Products, spending $800 each month.

63.     Priscilla continued to use the Tranont Products throughout her pregnancy with Ambundo Minor 1 in 2021 and 2022.

64. The family's regimen included Suthe twice a week and Serene once a week, with Priscilla and Ambundo Minor 1 using relief cream twice a month, and Jason using it four times a month.

65. Additional dosages included: (1) Glow Collagen: Priscilla and Ambundo Minor 1 took 4-6 tbsp/day; Jason took 2 tbsp/day, (2) TechnoBoost: Priscilla and Ambundo Minor 1 took 3 capsules/day; Jason took 2 capsules/day, (3) Radiant: Priscilla and Ambundo Minor 1 took 2 capsules/day; Jason took 1 capsule/day, (4) Mojo Creamer: Priscilla and Ambundo Minor 1 took 1-2 scoops/day; Jason took 1 scoop/day, (5) Mojo: Priscilla and Ambundo Minor 1 took 1 scoop/day; Jason took 1 scoop/day, (6) Restore: Priscilla and Ambundo Minor 1 took 3-6 capsules/day; Jason took 3 capsules/day, (7) Vibe: Priscilla and Ambundo Minor 1 took 3 capsules/day, (8) Balance: Priscilla and Ambundo Minor 1 took 3-6 capsules/day; Jason took 3 capsules/day, (9) Life: Priscilla and Ambundo Minor 1 took 3-9 capsules/day; Jason took 3 capsules/day, and (10) Nourish: Priscilla and Ambundo Minor 1 took 1-2 scoops/day.

66. Each of these doses were recommended consumption by Tranont.

67. As a result of consuming these products, Priscilla suffered from hair loss, fatigue, weight gain, depression, gum reduction, low body temperature, weakness, weakened immunity, severe constipation, headaches, rapid heartbeat, muscle cramps, anxiety, severe sinus issues, dry hands, brain fog, and tooth decay.

68. In the fall of 2021, Jason experienced sinus issues, tooth decay, night sweats, nosebleeds, irritability, and weight gain. These side effects were severe and occurred daily throughout their use of the Tranont Products.

69.    Between January 2022 and February 2023, Ambundo Minor 1, who ingested the Tranont Products through Priscilla's breastmilk, suffered from sinus issues, fever, nausea, weakened immunity, and hair loss.

70.    In February 2023, Priscilla and Jason noticed Ambundo Minor 1's teeth exhibited major decay and deterioration and had him tested for heavy metals. Ambundo Minor 1 was diagnosed with tooth decay and heavy metal toxicity, requiring extensive dental treatment.

71.    Upon learning about heavy metal contamination of the Tranont Products in January 2023, Priscilla and Jason ceased usage of them that same month.

72.    Priscilla then visited a doctor who ordered heavy metal testing. On May 19, 2023, Priscilla was diagnosed with high amounts of toxic metals.

73.    Priscilla and Jason faced significant out-of-pocket expenses for treatments.

74.    Priscilla spent extensive time, energy, and money on treatments for heavy metal toxicity, experiencing significant depression and major physical limitations.

75.    Jason experienced similar symptoms.

**(iv)    Esther Gonzalez**

76.    Esther, her husband Miguel Gonzalez ("**Miguel**"), and their children, Gonzalez Minor 1 ("**Gonzalez Minor 1**"), Gonzalez Minor 2 ("**Gonzalez Minor 2**"), and Gonzalez Minor 3 ("**Gonzalez Minor 3**"), have suffered significant harm from using the Tranont Products.

77.    Beginning in June 2021, Esther and her family started using the Tranont Products, spending $800 per month after purchasing from the Tranont website.

78.    At the time, Esther was breastfeeding Gonzalez Minor 3 while consuming the Tranont Products.

79.     The dosages included: (1) Glow Collagen: Esther took 2 tbsp/day, (2) TechnoBoost: Esther and Gonzalez Minor 1 took 2 capsules/day; Miguel and Gonzalez Minor 2 took 2 capsules twice a week, (3) Radiant: Esther, Miguel, Gonzalez Minor 1, and Gonzalez Minor 2 took 1 capsule/day, (4) Mojo creamer: Esther took 1 scoop/day; Miguel took 5 scoops/month, (5) Mojo: Esther took 1 scoop/day; Miguel took 5 scoops/month, (6) Restore: Esther, Miguel, Gonzalez Minor 1, and Gonzalez Minor 2 took 3 capsules/day, (7) Vibe: Esther and Miguel took 3 capsules/day; Gonzalez Minor 1 and Gonzalez Minor 2 took 2 capsules/day, (8) Balance: Esther and Miguel took 3 capsules/day; Gonzalez Minor 1 and Gonzalez Minor 2 took 2 capsules/day, (9) Life: Esther and Miguel took 3 capsules/day; Gonzalez Minor 1 and Gonzalez Minor 2 took 1 capsule/day, and (10) Nourish: Esther took 1 scoop/day.

80.     Starting in the fall of 2021, Esther experienced chronic fatigue, asthma, eczema, yeast infections, debilitating brain fog, weight gain, insomnia, anxiety, migraines, hair loss, heart palpitations, and depression.

81.     Miguel experienced fatigue, gut issues, irritability, fungus, brain fog, weight gain, depression, and weakened immunity. These symptoms persisted daily.

82.     In January 2023, Esther and her family first recognized issues with the Tranont Products and stopped using them in March 2023 after discovering high levels of heavy metal in the Products, despite being advertised as "clean and safe."

83.     After consulting a doctor who ordered a heavy metal testing, Esther and Miguel were diagnosed with heavy metal toxicity and gut dysbiosis in the fall of 2023. They both require expensive ongoing treatment.

84.     Esther has incurred financial costs from her injuries, paying out-of-pocket for the family's treatment.

85.     Starting in the fall of 2021, Esther noticed problems with her children. Gonzalez Minor 1 experienced emotional instability, irritability, weight gain, gut issues, fungus, tooth decay, gum infection, increased asthma, increased allergies, and insomnia, and was diagnosed with gut dysbiosis and parasites. Gonzalez Minor 2 suffered from weight loss, gut issues, nosebleeds, severe allergies, attention deficit, fungus, and insomnia, and was diagnosed with gut dysbiosis and parasites. Gonzalez Minor 3 experienced severe tooth decay, attention deficit, emotional instability, irritability, mood swings, weight loss, and insomnia, and was diagnosed with heavy metal toxicity and gut dysbiosis.

86.     All three children underwent stool testing, and Gonzalez Minor 3 also had heavy metal testing performed. Gonzalez Minor 1 and Gonzalez Minor 3 require extensive dental repairs, and all three children will need extensive detox treatments.

87.     Esther has devoted extensive time, energy, and money trying to heal from heavy metal toxicity, resulting in severe depression and significant physical limitations. Miguel also reports experiencing depression. Their family will never be the same.

**(v)    Aimee Lloyd**

88.     Aimee and her child, Lloyd Minor 1 ("**Lloyd Minor 1**"), who was breastfed while Aimee used the Products, have suffered severe and lasting harm due to consumption of the Tranont Products.

89.     Aimee began using the Tranont Products in April 2021, purchasing multiple items costing between $49-65 each, and used them daily.

13

90.     Starting in July 2021, Aimee started experiencing stomach pains, constipation, panic attacks, and fatigue. By August 2021, her panic attacks had become severe. These side effects occurred a few times a week, especially when she consistently took "Life (enrich)" capsules.

91.     While Aimee was taking the Tranont Products, Lloyd Minor 1 was breastfeeding. In April 2022, Aimee noticed Lloyd Minor 1's teeth beginning to space out and decay.

92.     Aimee stopped using "Life (enrich)" in late 2022 due to constipation and pain and discontinued all other products in February 2023 after learning about heavy metals in the Tranont Products. She learned about the contamination from the ERC lawsuit against Tranont for violations of Proposition 65.

93.     Aimee has incurred expenses on supplements to alleviate her symptoms.

94.     Aimee's life has become extremely stressful, especially regarding her child's health caused by the Tranont Products.

95.     She now experiences frequent fatigue and thyroid pain in, limiting her physical abilities.

**(vi)    Cheyenne Ware**

96.     Cheyenne and her child, Ware Minor 1 ("**Ware Minor 1**"), have been severely harmed by the Tranont Products.

97.     Cheyenne began using the Products in 2021, ordering from the Tranont website.

98.     During this period, Ware Minor 1 was breastfed while Cheyenne consumed the Tranont Products. She purchased Mojo Coffee for approximately $50-60 and Nourish protein shakes for $60-65. Cheyenne drank Mojo Coffee daily, and the protein shakes once or twice a day,

five times a week. Additionally, Ware Minor 1 consumed protein balls made from the Nourish

shakes and received the Tranont Products through breastfeeding.

99.     Within the first year of use, Cheyenne experienced extensive cavities and tooth

decay, with cavities detected at every dental exam.

100.     Cheyenne first noticed a problem with Ware Minor 1 at his dental visits, after

breastfeeding him for a year and a half while consuming the Tranont Products. After discovering

that Ware Minor 1 was also experiencing cavities and tooth decay, he had to undergo anesthesia to

fix his cavities and received five silver caps to prevent further decay.

101.     In February 2023, Cheyenne discontinued use of the Tranont Products upon

learning of the California lawsuit against Tranont for violating Proposition 65.

102.     Cheyenne sought dental treatment and was diagnosed with cavities beginning in

2021.

103.     Cheyenne has incurred substantial out-of-pocket expenses for treatment. Despite

having health insurance, her dental insurance covered only a minimal portion of the costs

associated with treating the cavities.

**(vii)    Mattie Allgyer**

104.     Mattie and her daughter, Allgyer Minor 1 ("**Allgyer Minor 1**") have experienced

adverse effects due to the Tranont Products.

105.     Mattie purchased the Tranont Products from Tranont for $60 and consumed them

one to two times a day.

106.     As a result of the Tranont Products, Allgyer Minor 1 has suffered from significant

tooth decay.

**(viii)   Linda Allgyer**

107.    Linda Allgyer, and almost two-year-old her child, Linda Allgyer Minor 1, have suffered immense damages because of taking the Tranont Products.

108.    Linda first ordered the Tranont Products through the Tranont website for $60.

109.    She consumed the Products one to two times a day every day of the week.

110.    Linda Allgyer Minor 1's teeth deteriorated and decayed after consuming the Products.

**(ix)   Seegal Moses**

111.    Seegal, and her husband, Richard Moses, have suffered significant harms through their use of the Tranont Products.

112.    Seegal's first purchase amounted to approximately $200, and she continued to spend more than that amount each subsequent month on Tranont Products for her and Richard. Seegal drank one to two cups of Mojo coffee daily and initially took collagen. Over time, she began using all the Tranont Products as directed, consuming enzymes, probiotics, various vitamins, and collagen throughout the day.

113.    Starting in October 2022, Seegal began experiencing extreme fatigue, muscle aches, nausea, headaches, and fever-like flushing, which persisted daily.

114.    By December 2022, she noticed a significant improvement in her condition when she reduced her intake of Mojo coffee and other Tranont Products.

115.   In January 2023, Richard suffered from a massive heart attack. He was taking Tranont Product at the time, with a focus on Boost as it is marketed to be good for the heart. He continued taking the Products afterward, until he suffered another heart attack a few weeks later.

116.   In March 2023, Seegal stopped using the Tranont Products entirely after a friend suggested potential issues with the Tranont Products and learning that their issues may be directly correlated with the Tranont Products. Richard immediately ceased use of all the Products and has not suffered another heart attack since.

117.   Seegal sought medical attention in late 2022 due to her symptoms. Richard sought medical attention after each heart attack.

118.   Seegal's doctor diagnosed her with adrenal fatigue and recommended supplements and rest. In January 2023, blood work confirmed diagnoses of adrenal fatigue and high cholesterol. Her treatment involved discontinuing the use of Tranont products and monitoring her diet.

119.   The extreme fatigue and associated symptoms severely impacted Seegal's ability to work, resulting in lost wages over a period of three to four months. Despite having health insurance, she experienced financial strain due to her inability to work.

120.   Seagal's life has changed dramatically; from being an active, busy individual, she became someone who spends most of her time resting and sleeping. This condition led to sleepless nights and ongoing depression. She has not fully recovered and now suffers from PTSD, exacerbated by the trust issues stemming from her experience with the Tranont Products.

**(x)    Lisa Spiegel**

121.   Lisa has suffered significant negative impacts on her life due to the Tranont Products.

122.    In 2022, Lisa began using Tranont Products, purchasing the Gold Pack for $650.

123.    She participated in "shake challenges," consuming four bottles per month and taking two bottles of Glow monthly. Following the labeled instructions, Lisa typically consumed (1) Nourish shakes; 2 bottles a day, (2) Mojo; 1 scoop a day, (3) Zest, (4) 3-6 Enrich; capsules a day, and (5) Optimize 3-6 capsules a day.

124.    Negative side effects emerged in late 2022.

125.    Lisa experienced hair thinning, had to triple her intake of Enrich for the same effect, and gained weight despite no dietary changes. She also suffered from depression. Her thyroid antibody levels increased, necessitating a higher dose of her medication.

126.    In September, a friend mentioned a lawsuit against Tranont and potential lead contamination. This prompted Lisa to reduce her usage of some products, particularly Glow, by half and stop drinking the shakes altogether in January. By April 2023, she ceased using all the Tranont Products, due to safety concerns after test results confirmed their danger.

127.    Lisa consulted a doctor who performed blood work for thyroid levels. She order a hair analysis for heavy metals kit, which she conducted herself. The tests revealed high levels of heavy metals, especially lead and aluminum. She was unable to pay for health insurance.

128.    On information and belief, the Tranont Products caused her diagnosis of heavy metal poisoning, which reactivated her thyroid antibodies and caused hair loss.

129.    Financially, Lisa has incurred out-of-pocket expenses for labs, office visits, supplements, and medication. She is financially and emotionally devastated by the loss of friendships and her reputation due to the Tranont Products. The impact on her life has been profound.

**(xi)    Amanda Allen**

130.    Amanda has faced severe suffering as a result of consuming the Tranont Products.

131.    In April 2021, Amanda purchased the Silver welcome pack for $345 from the Tranont website. Her regimen included: (1) Life; 3 capsules, (2) Mojo; 1 packet, (3) TechnoBoost; 2 capsules, (4) Glow; 2 tablespoons, and (5) Collagen Loading; 3 full servings a day for 30 days. Over the next few months, Amanda took every other product offered by Tranont, using the products three times a day, every day.

132.    Around October 2022, she began experiencing negative side effects, including joint pain, headaches, muscle cramps, hair loss, weight gain, anemia symptoms, and hormonal imbalances. These side effects were persistent. She also experienced a false positive pregnancy test, with lab results confirming no pregnancy.

133.    Amanda immediately ceased using the Tranont Products upon learning from Rikki James that they had been flagged for heavy metal contamination. Concerned about the safety of the products, she discontinued all use.

134.    Despite stopping use of the Tranont Products, Amanda continued to suffer from side effects until she started a heavy metal detoxification, which also caused significant kidney pain.

135.    Financial constraints prevented her from seeking comprehensive medical attention. Amanda requires a full panel of blood tests and a hair analysis, due to ongoing dental issues and menstrual irregularities.

136.    She has spent out-of-pocket money on a natural heavy metal detox and supplements. Without health insurance, these expenses are a burden.

137.    Amanda's life has been profoundly impacted. She no longer works as much as she once did. As an online associate for Tranont, she relies on social media to make sales for her business. When Amanda discovered Tranont lied about the Products and she saw the test results of lead and/or mercury in the Tranont Products, she was devastated.

138.    The emotional toll on Amanda has also been immense, since Amanda built her brand on honesty and transparency. She spent weeks in pain. Despite this, she did her best to inform others. She immediately contacted every mother, especially if they were breastfeeding a child, urging them to stop use of the Products. The impact on her reputation and that of her entire team (over 700 people) has been severe, all due to Tranont's deception.

139.    Amanda now is terrified of trusting companies again. Amanda struggles with self-trust and suffers from depression.

**(xii)    Stacey Noren**

140.    Stacey suffers lasting negative impacts from her use of the Tranont Products.

141.    In April 2021, Stacey purchased six to eight Tranont Products a month from the website and became a Tranont associate, investing between $700-$800 per month.

142.    Her regimen included: (1) Collagen; 1 oz per day, (2) Enrich; 2-3 capsules 3 times a day, (3) Optimize; 2 capsules 2 times a day, (4) Boost; 1 capsule 2 two times a day, (5) Focus; 3 capsules a day, (6) Multivitamin; 3 capsules a day, (7) Vitamin D; 1 capsule a day, (8) Renew; 1 capsule a day, (9) Mojo coffee; 2 servings a day, and (10) Nourish protein shakes; 1 a day). Stacey adhered to the regimen seven days a week.

143.    Within a month of starting the products, Stacey developed persistent eczema on her legs and chest, lasting the duration of her taking the Tranont Products.

144.    In October 2023, she encountered dental issues, including five cavities and a crown, detected only through annual x-rays. Additionally, Stacey suffered three miscarriages between April 2021 and February 2023 while using the Tranont Products.

145.    Stacey discontinued product use in February 2023 after learning about concerns regarding heavy metals in January 2023 with the Tranont Products. She pursued heavy metal detoxification protocols and sought dental care. She has undergone x-rays and bloodwork.

146.    Stacey's life has been turned upside down as a result of taking the Tranont Products.

147.    On information and belief, Tranont Products caused her multiple miscarriages, and her dental health has significantly deteriorated.

148.    Stacey contacted Tranont regarding the heavy metal concerns and requested to see the Certificates of Analysis (COAs) but her request was denied, with assurances from Tranont that the Products were safe.

**(xiii)   Heather Geisinger**

149.    Heather has endured severe and lasting damages from consumption of the Tranont Products.

150.    In May 2020, Heather signed up as an associate under the Tranont business model. She began using the Tranont Products in May 2020, with her first order amounting to $200. She followed recommended dosages, often doubling up as advised to address her health concern effectively. Heather adhered to daily usage, occasionally exceeding the recommended intake for probiotics and implantation supplements.

151.    In June 2022, she started suffering from bleeding ulcers, which ceased only upon discontinuing Tranont Product use. Additionally, she endured cracked and broken teeth, along with brittle bones. She continues to deal with these side effects.

152.    In May 2023, Heather stopped consuming the Tranont Products after her doctor, following an upper GI examination, disclosed that the products were damaging her gastrointestinal health. Despite ceasing use, the adverse effects persisted. Heather has been hospitalized multiple times, consulted numerous specialists, undergone extensive testing, and received intensive treatment, with ongoing medical care anticipated.

153.    Heather has borne substantial out-of-pocket medical expenses. Her experience with the Tranont Products has severely impacted her health and financial stability, leading to ongoing medical treatment and significant financial strain.

## FIRST CLAIM FOR RELIEF
**(Strict Liability for Design Defect, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

154.    Plaintiffs incorporate herein all preceding allegations set forth above.

155.    Tranont, individually and acting through its employees, agents, and third parties and in concert with each other, is liable to Plaintiffs for violations of the Utah Product Liability Act.

156.    Tranont manufactured, placed into the stream of commerce, distributed, and promoted its Tranont Products to consumers across the country.

157.    An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

158. The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

159. Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

160. Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

161. The deleterious side effects of Tranont Products experienced by each of the Plaintiffs, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to tooth decay, joint pain, headaches, muscle cramps, hair loss, weight gain, anemia symptoms, miscarriages, and hormonal imbalances.

162. The adverse side effects experienced by Plaintiffs after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

163. The presence of heavy metals in the Tranont Products was a design defect.

164. The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

165. The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

166. The Tranont Products were additionally dangerous because of the deleterious side effects possible after the consumption of heavy metals.

167.    The design defect of heavy metals in the Tranont Products was present at the time the product was sold to Plaintiffs.

168.    Plaintiffs each purchased Tranont Products from Tranont.

169.    Plaintiffs' use of Tranont Products was the cause of injury to each named Plaintiff and minor children of Plaintiffs.

170.    As a result, the defective condition of the Tranont Products caused Plaintiffs' injuries.

**SECOND CLAIM FOR RELIEF**
**(Strict Liability for Manufacturing Defect, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

171.    Plaintiffs incorporate herein all preceding allegations set forth above.

172.    Tranont, individually and acting through its employees, agents, and third parties and in concert with each other, is liable to Plaintiffs for violations of the Utah Product Liability Act.

173.    Tranont manufactured, placed into the stream of commerce, distributed, and promoted its Tranont Products to consumers across the country.

174.    An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

175.    The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

176.    Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

177.    Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

178.    The deleterious side effects of Tranont Products experienced by each of the Plaintiffs, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to tooth decays, joint pain, headaches, muscle cramps, hair loss, weight gain, anemia symptoms, miscarriages, and hormonal imbalances.

179.    The adverse side effects experienced by Plaintiffs after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

180.    The presence of heavy metals in the Tranont Products was a manufacturing defect.

181.    The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

182.    The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

183.    The Tranont Products were additionally dangerous because of the deleterious side effects possible after the consumption of heavy metals.

184.    The Tranont Products were unreasonably dangerous because the products were different from how the manufacturer intended to make them, meaning the manufacturing process contaminated the Tranont Products with heavy metals unintentionally.

185.    The manufacturing defect of heavy metals in the Tranont Products was present at the time the product was sold to Plaintiffs.

186.    Plaintiffs each purchased Tranont Products from Tranont.

187.    Plaintiffs' use of Tranont Products was the cause of injury to each named Plaintiff and minor children of Plaintiffs.

188.    As a result, the defective condition of the Tranont Products caused Plaintiffs' injuries.

### THIRD CLAIM FOR RELIEF
**(Strict Liability for Failure to Warn, Violation of the Utah Product Liability Act, Utah Code Ann. §§78B-6-701 to -707)**

189.    Plaintiffs incorporate herein all preceding allegations set forth above.

190.    Tranont, individually and acting through their employees, agents, and third parties and in concert with each other, are liable to Plaintiffs for violations of the Utah Product Liability Act.

191.    Tranont manufactured, placed into the stream of commerce, distributed, and promoted their Tranont Products to consumers across the country.

192.    Tranont was put on notice of that lead and/or mercury was discovered in Tranont Products when ERC filed a complaint against them on December 12, 2022.

193.    In any event, Tranont should have reasonably known that the Tranont Products contained dangerous levels of heavy metals prior to 2021.

194.    Tranont refused to inform Plaintiffs', sales associates, and consumers of this discovery and continued to sell the Tranont Products to all those listed.

195.    Due to Tranont's improper marketing and advertising of the Tranont Products and the inadequacy of its warnings, the Tranont Products were and are unreasonably dangerous to an

extent beyond that which would be contemplated by the ordinary and prudent buyer, consumer, or user of the Tranont Products in the community.

196.    An ordinary buyer of Tranont Products would not expect Tranont Products to contain dangerous levels of heavy metals.

197.    The suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products.

198.    Tranont is under a continuous duty to keep abreast of scientific developments touching upon the product and to notify its consumers of any potential dangers presented by using Tranont Products.

199.    Tranont is responsible for not only actual knowledge gained from research and adverse reaction reports but also for constructive knowledge measured by third parties and other available means of communications.

200.    The deleterious side effects of Tranont Products experienced by each of the Plaintiffs, of which Tranont was aware or should have been aware of through constructive knowledge, include but are not limited to tooth decays, joint pain, headaches, muscle cramps, hair loss, weight gain, anemia symptoms, miscarriages, and hormonal imbalances.

201.    The adverse side effects experienced by Plaintiffs after use of Tranont Products were a direct result of the presence of heavy metals in Tranont Products.

202.    The presence of heavy metals in the Tranont Products is unreasonably dangerous and posed/poses a significant risk to consumers of Tranont Products.

203.    The Tranont Products were unreasonably dangerous because an ordinary user of health supplements would expect the products to be free of harmful heavy metals, such as lead and/or mercury.

204.    The Tranont Products were additionally dangerous because of the deleterious side effects possible after the consumption of heavy metals.

205.    Tranont failed to provide adequate warnings regarding the presence of lead and/or mercury in Tranont Products, despite knowing or having reason to know of the hazards.

206.    Tranont's lack of an adequate warning made the Tranont Products defective and unreasonably dangerous.

207.    Health supplements, such as the Tranont Products, do not and should not contain life-altering heavy metals, and therefore, are not a foreseeable risk. A warning that the products contained lead and/or mercury could have prevented the foreseeable risks associated with ingesting such heavy metals.

208.    Tranont's lack of an adequate warning was the cause of the Plaintiffs' injuries.

## FOURTH CLAIM FOR RELIEF
### (Negligence)

209.    Plaintiffs incorporate herein all the preceding allegations set forth above.

210.    Tranont owed Plaintiffs a duty of care as sales associates and consumers of the Tranont Products, because Tranont sold and directed them to consume products that should have been free of toxins or heavy metals.

211.    Tranont owed Plaintiffs a duty and breached that duty, which caused damages to Plaintiffs.

212.    Tranont must use ordinary care in warning foreseeable end users about potentially dangerous products that are known or should be known to them and are not readily apparent to end users.

213.    Tranont owed Plaintiffs a duty because injury to Plaintiffs was reasonably foreseeable based on Tranont's conduct, as were the injuries suffered.

214.    Tranont further has a duty to exercise reasonable care in the design, manufacture, marketing, and distribution of the Tranont Products.

215.    Tranont breached its duty of care to the Plaintiffs when the Tranont Products were not free of toxins and contained heavy metals, such as lead and/or mercury.

216.    Reasonably prudent wholesale distributors would have recognized the risk of heavy metals within the Tranont Products and issued warnings and/or taken protective measures to ensure consumers of the Tranont Product were not injured.

217.    On information and belief, Tranont was operating under a GMP certification obtained before significant formula changes and the dismissal of formulators. The company failed to test the Tranont Products for safety, altered ingredients and sourcing to cut costs, and attempted to cover up the problems while denying their existence.

218.    All of these acts and omissions caused injury to Plaintiffs which injury was reasonably foreseeable and preventable.

219.    Tranont was in the best position to prevent the injuries caused to Plaintiffs due to its advanced knowledge of the manufacture, distribution, and creation of the Tranont Products.

220.    Tranont Products and Tranont's acts and omissions were the actual and proximate cause of Plaintiffs' injuries.

221.    Plaintiffs have suffered extensive physical and financial injuries.

## FIFTH CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability, Violation of Utah Code Ann. §§70A-2-314)

222.    Plaintiffs incorporate herein all the preceding allegations set forth above.

223.    "[A] warranty that goods shall be merchantable is implied in contract for their sale if the seller is a merchant with respect to goods of that kind." Utah Code Ann. § 70A-2-314(1).

224.    Tranont markets itself as a leading producer of products that "helps support healthy digestion, nutrient absorption, and overall wellness[.]"

225.    Tranont marketed and sold Tranont Products advertising the health and wellness benefits to Plaintiffs.

226.    Plaintiffs relied on Tranont's representations regarding the quality and uses of Tranont Products and purchased Tranont Products for uses consistent with those for which Tranont marketed Tranont Products. When Plaintiffs used Tranont Products as directed, each suffered significant health conditions directly attributable to Tranont Products.

227.    It was reasonably foreseeable to Tranont that Plaintiffs would use Tranont Products in the manner they did.

228.    As a direct and proximate result of Tranont Products, Plaintiffs have incurred and continue to incur damages including, but not limited to, the medical expenses of Plaintiffs and children involved, and future medical expenses.

## SIXTH CLAIM FOR RELIEF
### (Violation of Utah Consumer Sales Practices Act, Utah Code Ann. §§13-11-1 to -19)

229.    Plaintiffs incorporate herein all the preceding allegations set forth above.

230.     At all times relevant herein, Tranont violated the Utah Consumer Sales Practice Act (the "**UCSPA**") by knowingly or intentionally engaging in deceptive acts and practices in the course of trade and commerce, which conduct injured Plaintiffs.

231.     Plaintiffs directly or indirectly sought or acquired goods from Tranont.

232.     Plaintiffs purchased the goods as a direct result of Tranont's deceptive trade practices.

233.     Tranont is subject to liability under the UCSPA because its fraudulent and deceitful misrepresentations were communicated to Plaintiffs and form the basis of Plaintiffs' UCSPA claims.

234.     Tranont deceptively advertised and/or indicated to Plaintiffs that the Tranont Products would provide certain health and wellness benefits. Tranont also deceptively indicated that the Tranont Products were of a particular standard or quality, which they were not.

235.     Based on those misrepresentations and indications, Tranont Products were purchased by Plaintiffs.

236.     Tranont's unfair and deceptive representations and omissions, which include promoting the use of Tranont Products for overall health and well-being, constitute violations of the UCSPA.

237.     Tranont is liable for committing the following false, misleading, and deceptive acts included in the UCSPA:

a.     Indicating that the subject of a consumer transaction has sponsorship, approval, approval, performance characteristics, accessories, uses, or benefits if it has not. Utah Code Ann. § 13-11-4(2)(a).

b.  Indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. Utah Code Ann. § 13-11-4(2)(b).

c.  Indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. Utah Code Ann. § 13-11-4(2)(e).

238.   Tranont misrepresented that Tranont Products have characteristics, benefits, and uses they do not have, such as representing that Tranont Products were safe and effective.

239.   Tranont deceitfully and unconscionably failed to disclose information about Tranont Products

240.   Tranont deceitfully and unconscionably failed to disclose information about Tranont Products that were known at the time they marketed and sold Tranont Products to Plaintiffs, with the intent of inducing them to enter into transactions they would not have entered into if the information had been disclosed.

241.   Plaintiffs relied on information from Tranont in making decisions regarding the purchase and use of Tranont Products under belief that such information was reliable, true, and complete.

242.   On information and belief, Tranont exploited its position of perceived authority and integrity and took advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree.

243.   On information and belief, Tranont knew, or should have known, and intended that consumers such as Plaintiffs would rely on its representations.

244.    Plaintiffs relied on Tranont's false, misleading, and deceptive acts and practices about Tranont Products to their detriment. Misled by Tranont's representations, Plaintiffs paid for large quantities of Tranont Products for the purpose of general health and well-being as advertised by Tranont and incurred substantial direct and consequential expenses as a result.

245.    Tranont's unfair, deceptive, and unconscionable representations, acts, and omissions were reasonably calculated to deceive, and did deceive, Plaintiffs, who purchased Tranont Products for health benefits. Tranont's misrepresentations and omissions caused Plaintiffs significant damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment and other relief against Defendant as follows:

A.    Compensatory damages in an amount to be proven at trial.

B.    Consequential damages in an amount to be proven at trial.

C.    Punitive damages in an amount to be proven at trial.

D.    Attorneys' fees and costs incurred in bringing this action.

E.    Pre- and post-judgment interest in an amount to be determined by the Court.

F.    Other amounts of damage that is reasonable and necessary under the circumstances.

DATED: July 25, 2024.

PARR BROWN GEE & LOVELESS, PC

/s/*Jonathan O. Hafen*
Jonathan O. Hafen
*Attorneys for Plaintiffs*

KUNZLER BEAN & ADAMSON, PC

/s/*R. Jeremy Adamson*
R. Jeremy Adamson
*Attorneys for Plaintiffs*