# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RIKKI JAMES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> IMONEY TOOLS, LLC dba TRANONT, a Utah limited liability company, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:24-cv-00522-RJS-JCB <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Jared C. Bennett |

Before the court is Defendant iMoney Tools, LLC dba Tranont's Motion to Dismiss.[1] For the reasons stated below, the court DENIES Tranont's Motion.

## BACKGROUND[2]

This action concerns dietary supplements allegedly contaminated with harmful levels of heavy metals.[3] Plaintiffs Rikki James, as guardian for James Minors 1, 2, 3, and 4; Priscilla Ambundo, as guardian for Ambundo Minor 1; Esther Gonzalez, as guardian for Gonzalez Minors 1, 2, and 3; Aimee Lloyd, as guardian for Lloyd Minor 1; Cheyenne Ware, as guardian for Ware Minor 1; Mattie Allgyer, as guardian for Mattie Allgyer Minor 1; and Linda Allgyer, as guardian for Linda Allgyer Minor 1 (Plaintiffs) allege Tranont manufactured and sold dietary supplements "it knew or should have known contained dangerous levels of toxins."[4] According

---

[1] Dkt. 28, *Motion to Dismiss Second Amended Complaint* (*Motion*).

[2] Because this case is before the court on a motion to dismiss, it accepts as true all well-pleaded factual allegations in the Second Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[3] *See* Dkt. 27, *Second Amended Complaint*.

[4] *See id.* ¶¶ 2, 6–12, 19. The court refers to the various supplements described in the Second Amended Complaint as the Products. The supplements at issue include: (1) Tranont Nourish GOS Prebiotic Meal Replacement Coconut Cream, (2) Tranont Nourish GOS Prebiotic Meal Replacement Brown Batter, (3) Tranont Boost, (4) Tranont Glow Advanced Type 1 Collagen with Superfood Antioxidant Support Strawberry Banana, (5) Tranont Glow Advance Type 1 Collagen with Superfood Antioxidant Support Orange Cream, (6) Glow Collagen, (7) TechnoBoost,

to Plaintiffs, the Products included "dangerous levels" of heavy metals such as lead and mercury.[5] Plaintiffs allege they ingested one or more of the Products either during pregnancy, while breastfeeding, or as food,[6] which led to serious health conditions such as tooth decay,[7] behavioral issues,[8] and heavy metal toxicity.[9]

Plaintiffs initiated this action on July 26, 2024.[10] After the court issued an Order to Show Cause why it should not dismiss the action for lack of subject matter jurisdiction,[11] Plaintiffs filed their First Amended Complaint on August 28, 2024.[12] The Parties then filed a Stipulated Motion to Amend the First Amended Complaint on December 16, 2024,[13] which this court

---

(8) Radiant, (9) Mojo Creamer, (10) Mojo, (11) Mojo Coffee, (12) Restore, (13) Vibe, (14) Balance, (15) Life, (16) Nourish, (17) Suthe, (18) Serene, (19) protein shakes, and (20) protein powder. *See id.* ¶¶ 25, 54, 55, 66, 78, 86.

[5] *See id.* ¶¶ 2, 5, 25, 163. As alleged in the Complaint, Tranont entered into a Consent Judgment related to the Products with Environmental Research Center, Inc. in a separate matter. *See Second Amended Complaint* ¶ 26; *see also* Dkt. 28-5, *Stipulated Consent Judgment*. Plaintiffs refer to the Consent Judgment to bolster their allegations regarding the presence of heavy metals in the Products. Tranont takes issue with this and argues the Consent Judgment is not probative of any wrongdoing. *See Motion* at 16–18. The court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). The court may consider the Consent Judgment in evaluating Tranont's Motion because Plaintiffs refer to it in the Complaint, do not dispute the authenticity of the copy provided by Tranont, *see generally Opposition*, and it is central to Plaintiffs' claims. While the court agrees with Tranont that the Consent Judgment itself is not probative as to whether the Products actually contain harmful levels of heavy metals, Plaintiffs' references to the Consent Judgment provide necessary context for understanding which specific Products Plaintiffs allege contain harmful levels of which specific heavy metals. *See Second Amended Complaint* ¶ 25. The court also notes Plaintiffs define the term "Tranont Products" in their discussion of the Consent Judgment, which provides context for understanding which Products Plaintiffs allege they ingested later in the Complaint. *See id.*

[6] *Id.* ¶¶ 39–41 (James Minors 1, 2, 3, and 4); *id.* ¶¶ 52–57 (Ambundo Minor 1); *id.* ¶¶ 64–66 (Gonzalez Minors 1, 2, and 3); *id.* ¶¶ 78–79 (Lloyd Minor 1); *id.* ¶¶ 85–86 (Ware Minor 1); *id.* ¶ 92 (Mattie Allgyer Minor 1); *id.* ¶ 98 (Linda Allgyer Minor 1).

[7] *Id.* ¶¶ 58, 70, 72, 87, 93.

[8] *Id.* ¶¶ 46, 83.

[9] *Id.* ¶¶ 48, 58, 72.

[10] *See* Dkt. 1, *Complaint*.

[11] *See* Dkt. 12, *Order to Show Cause*.

[12] *See* Dkt. 14, *First Amended Complaint*.

[13] Dkt. 25, *Stipulated Motion to Amended First Amended Complaint*.

granted.[14]  Plaintiffs filed their Second Amended Complaint (Complaint) on January 10, 2025.[15]  In it, they assert four claims for relief: (1) strict liability for design defect under the Utah Product Liability Act (UPLA); (2) strict liability for failure to warn under the UPLA; (3) negligence; and (4) breach of the implied warrant of merchantability under Utah law.[16]  Plaintiffs seek compensatory, consequential, and punitive damages, as well as attorneys' fees and costs.[17]  Tranont now moves to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).[18]  In the alternative, Tranont asks the court to dismiss Plaintiffs' request for consequential damages and all of Plaintiffs' claims except for negligence.[19]  The Motion is fully briefed and ripe for review.[20]

## LEGAL STANDARDS

Rule 12(b)(1) permits a party to move to dismiss a claim for "lack of subject-matter jurisdiction."[21]  Such motions take two forms: facial attacks and factual attacks.[22]  "A facial attack assumes the allegations in the complaint are true and argues they fail to establish

---

[14] Dkt. 26, *Order Granting Stipulated Motion to Amend*.

[15] *Second Amended Complaint*.

[16] *See id.* ¶ 102–77.  The Complaint included a fifth claim for strict liability for a manufacturing defect under the UPLA, *see id.* ¶¶ 119–36, which Plaintiffs withdrew, *see* Dkt. 31, *Plaintiffs' Opposition to Motion to Dismiss Second Amended Complaint* (*Opposition*) at 2 n.2.

[17] *See Second Amended Complaint* at 23.

[18] *See Motion* at 2.

[19] *See id.*

[20] *See Opposition*; Dkt. 37, *Reply in Support of Motion to Dismiss Second Amended Complaint* (*Reply*).

[21] Fed. R. Civ. P. 12(b)(1).

[22] *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022).  The court construes Tranont's Motion as a facial attack. While Tranont does not state whether it pursues a facial or factual challenge, its only arguments against subject matter jurisdiction rely on whether Plaintiffs have adequately pleaded standing.  *See Motion* at 7–18.  While Tranont adduces evidence outside the Complaint by attaching the Consent Judgment to its Motion, it uses the Consent Judgment only to argue Plaintiffs have failed to state a claim for relief.  *See id.* at 16–18.

jurisdiction."[23]  "A factual attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[24]

A "fundamental principle" of subject matter jurisdiction is the Constitution only permits a federal court to adjudicate "actual cases or controversies."[25]  "To establish a case or controversy, a plaintiff must possess standing to sue,"[26] which is demonstrated by three elements: (1) "injury in fact," (2) causation, and (3) redressability.[27]  "The party invoking federal jurisdiction bears the burden of establishing these elements."[28]  Causation, or ensuring "an injury is 'fairly traceable' to the challenged conduct," is adequately shown when a plaintiff alleges "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."[29]  On a motion to dismiss, a plaintiff establishes causation "by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury."[30]

Under Rule 12(b)(6), the court must dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."[31]  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[23] *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citation omitted).

[24] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (citation omitted).

[25] *See Shields Law Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1279 (10th Cir. 2024) (citation omitted).

[26] *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016)).

[27] *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813–14 (10th Cir. 2021).

[28] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

[29] *Santa Fe All.*, 993 F.3d at 814 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)).

[30] *Id.* (citation omitted).

[31] Fed. R. Civ. P. 12(b)(6).

face.'"[32] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] "Though a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'"[34] That is, while "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory . . . [t]echnical fact pleading is not required."[35] To be sure, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[36] "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."[37] When considering a Rule 12(b)(6) challenge, the court views the evidence "in the light most favorable to the nonmoving party"[38] and considers whether a complaint "taken as a whole" entitles a plaintiff to relief.[39]

## ANALYSIS

Tranont seeks dismissal of Plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. The court addresses each argument in turn.

---

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[33] *Id.* (citing *Twombly*, 550 U.S. at 556).

[34] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

[35] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (internal quotation marks and citations omitted).

[36] *Iqbal*, 556 U.S. at 678.

[37] *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citation omitted).

[38] *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (quotation omitted).

[39] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173 (10th Cir. 2010) (citing *Twombly,* 550 U.S. at 554–56).

## I. Subject Matter Jurisdiction

The court begins by considering Tranont's argument for dismissal under Rule 12(b)(1). Tranont contends the court lacks subject matter jurisdiction because Plaintiffs have failed to establish standing.[40] Tranont does not dispute Plaintiffs have alleged redressable injuries, instead arguing Plaintiffs have not plausibly alleged causation because they "have not bridged the gap between the unspecified levels of heavy metals purportedly found in Tranont's Products and their alleged injuries."[41] Specifically, Tranont contends Plaintiffs failed to plead (1) which specific heavy metals are found (2) in which specific Products (3) at what levels, as well as (4) sufficiently detailed allegations surrounding any heavy metal testing Plaintiffs underwent for those heavy metals.[42] To establish causation, Tranont argues, Plaintiffs needed to further allege "the level at which heavy metals are unsafe" and "that the illnesses they purportedly have are caused by heavy metals and at what level."[43] Otherwise, Tranont posits, any causal inference is too speculative to establish standing.[44]

In response, Plaintiffs argue Tranont "asks the [c]ourt to go too far."[45] Plaintiffs contend they "need only allege a causal connection between their consumption of contaminated Tranont Products and the injuries each minor sustained," which they have accomplished by alleging "specific physical injuries directly connected to Tranont Products," that is, the "consumption of

---

[40] *See Motion* at 7–15.

[41] *Id.* at 14–15. Tranont cites several cases and makes additional arguments that it suggests relate to standing, but which support the proposition that Plaintiffs have failed to state a claim. *See id.* at 8–14. For clarity, the court addresses these arguments separately. *See infra* § II.

[42] *Id.* at 14. The court notes the Complaint does allege which specific heavy metal is allegedly found in each specific Product. *See Second Amended Complaint* ¶ 25.

[43] *Id.*

[44] *Id.* at 15 (citing *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008)).

[45] *Opposition* at 14.

6

Tranont's products actually caused [Plaintiffs] harm."[46] The court agrees. Here, Plaintiffs have each alleged "a substantial likelihood"[47] that the Products they ingested caused their injuries.[48] This is sufficient to "allow for the conclusion" that the Products were the but for cause of Plaintiffs' injuries without necessitating any speculation.[49] Indeed, the court is unsure how Plaintiffs could have more clearly pleaded causation or why the specificity demanded by Tranont is necessary in light of the governing standard. Because Plaintiffs have established standing by adequately pleading causation, the court declines to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

## II. Failure to State a Claim

The court now turns to Tranont's arguments for dismissal under Rule 12(b)(6). First, Tranont argues the court should dismiss Plaintiffs' Complaint in its entirety because "Plaintiffs have not plausibly alleged Tranont's Products caused their injuries,"[50] an essential element of each of Plaintiffs' claims. Tranont then attacks Plaintiffs' strict liability and implied warranty of merchantability claims on additional grounds.[51] The court's analysis proceeds accordingly.

---

[46] *Id.* (emphasis omitted).

[47] *Santa Fe All.*, 993 F.3d at 814.

[48] *See* Second Amended Complaint ¶ 45 ("Upon information and belief, the Tranont Products caused the James Minors to experience a significant health decline."); *id.* ¶ 62 ("The poisoning has caused [Ambundo Minor 1] severe pain and suffering along with permanent injuries, including dental decay and other long-term health effects."); *id.* ¶ 75 ("Upon information and belief, the Tranont Products caused the health of the Gonzalez Minors to significantly decline due to heavy metals in the products."); *id.* ¶ 83 ("The poisoning has caused [Lloyd Minor 1] severe pain and suffering along with permanent injuries, including dental decay, behavioral issues, and other long-term health effects."); *id.* ¶ 89 ("Upon information and belief, the Tranont Products caused Ware Minor 1's health to significantly decline due to heavy metals in the products."); *id.* ¶ 94 ("Upon information and belief, the Tranont Products caused the health of Mattie Allgyer Minor 1 to significantly decline due to heavy metals in the products."); *id.* ¶ 101 ("The poisoning has caused [ Linda Allgyer Minor 1] severe pain and suffering along with permanent injuries, including dental decay and other long-term health effects.").

[49] *Santa Fe All.*, 993 F.3d at 814.

[50] *Motion* at 7 (capitalization altered).

[51] *Id.* at 18–26.

In arguing causation, Tranont reiterates many of the arguments it made regarding standing.[52] But Tranont also argues Plaintiffs' causation allegations cannot survive review under Rule 12(b)(6) because they are "conclusory,"[53] that is, Plaintiffs' allegations "amount[] to a claim that, because Plaintiffs and/or their mothers used Tranont's Products, that use must be the cause of their injuries, as opposed to the myriad of other reasons Plaintiffs may have contracted the ailments of which they complain."[54]

In support of this argument, Tranont points the court to several cases dismissed under Rule 12(b)(6) that involved consumption of heavy metals.[55] But none of these cases are binding on the court. Indeed, the court finds the cases provided by Tranont to be of limited persuasive value. As explained above, it is the standard under *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 8 that governs this court's inquiry into whether Plaintiffs' claims can withstand a motion to dismiss under Rule 12(b)(6). That standard requires the court, after disregarding conclusory statements and examining the Complaint "as a whole," to consider whether Plaintiffs

---

[52] *See id.* at 8 ("Plaintiffs have utterly failed to allege what heavy metals are allegedly found in which of Tranont Products and at what levels, how much of the unspecified heavy metal they purportedly consumed, and the level of heavy metal consumption that is considered unsafe."); *id.* at 11 (arguing Plaintiffs must "at a minimum" allege "which Products contain which heavy metals and at what levels, whether the heavy metals are found at a level sufficient to cause injury, the level of heavy metals Plaintiffs consumed, and that Plaintiffs' purported injuries can be caused by that particular level of those particular heavy metals" to survive Rule 12(b)(6) review).

[53] *See id.* at 8–11.

[54] *Id.* at 8 (emphasis omitted). Relatedly, Tranont also argues Plaintiffs "have not alleged that the illnesses they purportedly have are caused by heavy metals" or that heavy metals "are even capable of causing" Plaintiffs' alleged injuries. *Id.* at 3, 14. The court finds this argument unpersuasive. Here, Plaintiffs allege the heavy metals in Tranont's products caused their injuries—a necessary implication being heavy metals were capable of causing those injuries. To the extent it even requires an inference to reach that conclusion, such an inference is surely a reasonable one.

[55] *Id.* at 12–14 (citing *Kimca v. Sprout Foods, Inc.*, No. BER-L-2538-22, 2022 WL 3586095 (N.J. Super. Ct. Law Div. Aug. 05, 2022); *Slawsby v. Champion Petfoods USA, Inc.*, No. CV 18-10701-GAO, 2023 WL 2647065 (D. Mass. Mar. 27, 2023); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150 (S.D. Cal. 2024); *In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 21-cv-00678 (NRM) (AYS), 2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862-HSG, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024); *Weaver v. Champion Petfoods USA Inc.*, No. 18-cv-1996-JPS, 2019 WL 2774139 (E.D. Wis. July 1, 2019); *Balistreri v. McCormick & Co.*, No. 5:22-cv-00349-EJD, 2023 WL 5988600 (N.D. Cal. Sep. 13, 2023)).

have offered "enough factual detail" to give Tranont "fair notice" of Plaintiffs' plausible claims and the grounds on which they rest.[56]

Here, Plaintiffs have alleged they consumed the Products allegedly contaminated with heavy metals at levels sufficient to cause severe consequences to Plaintiffs' health.[57] The rest of the Complaint provides color to Plaintiffs' claims, including how often they consumed the Products,[58] the types of heavy metals allegedly present in harmful amounts in the Products,[59] and the injuries they allegedly suffered as a result of ingesting those heavy metals.[60] Plaintiffs need not provide more factual detail to give Tranont fair notice of the claims against it under Rule 8's liberal pleading standard. The additional facts Tranont argues are necessary, including (1) which specific heavy metals each Plaintiff ingested; (2) at what levels the heavy metals were present in Tranont's products; (3) which specific products, and how much of them, each Plaintiff consumed; and (4) the level of heavy metals that is unsafe to consume, are technical facts that may come out in fact or expert discovery. The court therefore finds Plaintiffs have adequately alleged Tranont's products caused their injuries and declines to dismiss Plaintiffs' Complaint for failure to state a claim on that ground.[61]

The court now turns to Tranont's additional arguments regarding Plaintiffs' strict liability and implied warranty of merchantability claims.

---

[56] *Warnick*, 895 F.3d at 751; *Lemmon*, 614 F.3d at 1173.

[57] *See, e.g.*, Second Amended Complaint ¶ 5.

[58] *See, e.g.*, *id.* ¶ 41.

[59] *See id.* ¶¶ 2, 25.

[60] *See, e.g.*, *id.* ¶¶ 46.

[61] Tranont does not specifically address Plaintiffs' negligence claim beyond arguing Plaintiffs failed to plead causation. *See generally Motion*. Because the court has found Plaintiffs adequately pleaded causation, the court denies Tranont's Motion with respect to Plaintiffs' negligence claim.

### A. Strict Liability

Tranont argues Plaintiffs' strict liability claims fail for two additional reasons: Plaintiffs failed to plead (1) the specific defect at issue in Tranont's products and (2) that the products were "unreasonably dangerous."[62] The court addresses each argument in turn.

"Products liability claims require proof of a defective product, which can include manufacturing flaws, design defects, and inadequate warnings regarding use."[63] While strict liability claims emerged in the common law, the UPLA codified the standard the court uses to evaluate such claims.[64] Under the UPLA, a plaintiff must prove three elements to make out a strict liability claim: "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries."[65] A product is "unreasonably dangerous" when it is "dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer."[66]

Tranont first argues Plaintiffs have not plausibly alleged the existence of a design defect.[67] Not so. Plaintiffs allege the "extreme amounts of heavy metals" in Tranont's products

---

[62] *Id.* at 18–21.

[63] *Niemela v. Imperial Mfg., Inc.*, 263 P.3d 1191, 1195 (Utah Ct. App. 2011) (citation omitted).

[64] *See id.*

[65] *Id.* (citation omitted).

[66] Utah Code § 78B-6-702.

[67] *Motion* at 18–19. Tranont also argues Plaintiffs are required to plead the existence of a safer, alternative design. *Id.* at 19. But this is not an element of a design defect claim that a plaintiff must plead in its complaint to survive a motion to dismiss; it is a part of the standard the court applies at summary judgment. *See Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1479–81 (10th Cir. 1993).

are a design defect.[68] Tranont again takes issue with Plaintiffs' failure to plead the specific identities and amounts of heavy metals that constitute the alleged defect, arguing that without further specificity, Plaintiffs' allegations are merely conclusory.[69] But that is not what "conclusory" means.[70] It would be conclusory for Plaintiffs to allege Tranont's products suffer from a design defect without alleging more. But Plaintiffs *have* alleged more—that Tranont's products contain heavy metals, including lead and mercury.[71] This fact, "if assumed to be true, plausibly suggest[s]"[72] Tranont's liability. The court therefore find Plaintiffs have adequately pleaded the existence of a defect.

Tranont next argues Plaintiffs have not plausibly alleged the Products were unreasonably dangerous on two grounds. First, "[b]ecause Plaintiffs have not established which heavy metals were allegedly found in Tranont's Products and at what levels, they necessarily have not plausibly alleged Tranont's Products were unreasonably dangerous."[73] But Plaintiffs *have* alleged which heavy metals are present in each Product.[74] This allegation, coupled with the alleged harms Plaintiffs suffered as a result of ingesting the Products, is sufficient to plead the Products were unreasonably dangerous. As the court has already explained, Plaintiffs need not plead additional facts to withstand a motion to dismiss.

Second, Tranont points the court to two cases standing for the proposition that alleging the "mere presence" of heavy metals is insufficient to establish unreasonable dangerousness

---

[68] *See Second Amended Complaint* ¶¶ 5, 106, 111.

[69] *Motion* at 18–19.

[70] *Clinton*, 63 F.4th at 1275 (citation omitted) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement.").

[71] *See Second Amended Complaint* ¶¶ 25, 163.

[72] *Kan. Penn Gaming*, 656 F.3d at 1214.

[73] *Motion* at 21.

[74] *See Second Amended Complaint* ¶ 25.

"because all food contains 'at least some' heavy metals."[75] But these cases, in addition to being non-binding, are inapposite. None of the plaintiffs alleged physical injuries and instead sought damages under theories of economic loss.[76] Where the question is the dangerousness of a product, it makes sense for a court to require a plaintiff who has not suffered a physical injury to plead additional facts explaining what makes the product dangerous. But here, Plaintiffs allege they suffered physical injuries because of the heavy metals in Tranont's Products. Requiring Plaintiffs to allege *further* facts to support a finding of unreasonable dangerousness is therefore unnecessary. In addition, in *Weaver*, the Plaintiff alleged that *any* amount of heavy metals contained in a product was unacceptable.[77] Not so here. In the case at bar, Plaintiffs allege they "were poisoned by extreme amounts of heavy metals in Tranont's product[s]."[78] They further plead "[t]he suggested intake of Tranont Products presented a dangerous level of heavy metal consumption to consumers of Tranont Products."[79] While Plaintiffs do suggest elsewhere in the Complaint that the mere presence of heavy metals establishes unreasonable dangerousness,[80] the court finds—taking the Complaint as a whole—Plaintiffs adequately allege it is the purported significant amount, not the mere presence, of heavy metals in the Products that allegedly renders them unreasonably dangerous.

---

[75] *Id.* at 21 (first quoting *Weaver*, 2019 WL 2774139, at *3; and then citing *In re Hain Celestial*, 2024 WL 5239510, at *12).

[76] *See Weaver*, 2019 WL 2774139, at *1 ("Plaintiff was injured when he paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what was promised."); *In re Hain Celestial*, 2024 WL 5239510, at *8 ("Plaintiffs have sufficiently alleged an injury-in-fact based on their payment of a premium price for Hain's baby food products . . . .").

[77] *Weaver*, 2019 WL 2774139, at *3 (explaining why alleging the "mere presence" of heavy metals is insufficient to sustain Plaintiff's claim).

[78] *See Second Amended Complaint* ¶ 5.

[79] *Id.* ¶ 106.

[80] *See id.* ¶¶ 111–13.

For the reasons explained above, the court denies Tranont's motion to dismiss with respect to Plaintiffs' strict liability claims.

### B. Implied Warranty of Merchantability

Tranont argues the court should dismiss Plaintiffs' claim for breach of the implied warranty of merchantability for two reasons: (1) it is preempted by federal law, and (2) Tranont disclaimed the warranty.[81] The court addresses each argument in turn.

"Unless excluded or modified[], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[82] To be merchantable, goods must at least be "fit for the ordinary purposes for which such goods are used."[83] Under Utah law, "the elements of strict liability and breach of warranty 'are essentially the same.'"[84]

In support of its preemption argument, Tranont directs the court to *Greenberg v. Target Corp.*, a Ninth Circuit case concerning whether a dietary supplement containing biotin was deceptively labeled in violation of California law.[85] In *Greenberg*, the Ninth Circuit explained the Federal Food, Drug, and Cosmetic Act (FDCA) preempts any "state-law requirements for claims about dietary supplements that differ from the FDCA's requirements."[86] This includes what is known as a manufacturer's "structure/function claim"—a statement (e.g., on a product's

---

[81] *See Motion* at 21–26. Tranont also argues the implied warranty of merchantability claim should be dismissed because it has the same elements as a strict products liability claim. *See id.* at 20 n.6. But this argument fails because the court has already found Plaintiffs adequately pleaded that claim.

[82] Utah Code § 70A-2-314(1).

[83] *Id.* § 70A-2-314(2)(c).

[84] *Kirkbride v. Terex USA, LLC*, 798 F.3d 1343, 1354 (10th Cir. 2015) (quoting *Straub v. Fisher & Paykel Health Care,* 990 P.2d 384, 389 n.1 (Utah 1999)).

[85] 985 F.3d 650 (9th Cir. 2021).

[86] *Id.* at 655 (citation omitted).

label) that "merely describes the function or role of an ingredient or nutrient on the human body."[87]

Tranont argues the FDCA preempts Plaintiffs' breach of the implied warranty of merchantability claim because the Products' labels only make structure/function claims.[88] Thus, in Tranont's view, any cause of action alleging the Products' labeling violates state law but is otherwise consistent with the FDCA must be preempted. In response, Plaintiffs maintain the FDCA does not preempt their merchantability claim because the claim is for "product contamination, not labeling."[89] In other words, Plaintiffs allege the Products' "actual contents" are what trigger liability on their merchantability claim.[90]

The court agrees with Plaintiffs. In their Complaint, Plaintiffs allege they "suffered significant health declines because the products contained harmful substances inconsistent with the ordinary purpose for which such goods are used."[91] While Plaintiffs also make allegations regarding the labeling on Tranont's Products,[92] the thrust of their claim focuses on the alleged physical harms caused by the Products.[93] The court therefore declines to find federal law preempts Plaintiffs' implied warranty of merchantability claim.

Relying on exhibits first presented to the court with its Motion, Tranont also contends it disclaimed the implied warranty of merchantability on two occasions. First, Plaintiffs'

---

[87] *Id.* at 654. The court is not aware of any case in which the Tenth Circuit has adopted *Greenberg*'s holding.

[88] *See Motion* at 21–23.

[89] *Opposition* at 18 (emphasis omitted).

[90] *Id.* at 18–19.

[91] *Second Amended Complaint* ¶ 175; *see also* Utah Code § 70A-2-314(2)(c).

[92] *See Second Amended Complaint* ¶¶ 172–75.

[93] *See id.* ¶¶ 174–77.

guardians, the original purchasers of the Products,[94] entered into contractual agreements with Tranont waiving the warranty, and second, the Terms of Use on Tranont's website governing sales of the Products also disclaimed the warranty.[95]  In response, Plaintiffs argue the court cannot impute any disclaimers to Plaintiffs because they are not parties to any agreements with Tranont and, as minors, lack the capacity to contract.[96]

"Generally, the sufficiency of a complaint must rest on its contents alone."[97]  But when "evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference."[98]  The court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[99]

Here, Plaintiffs do not attach any contractual agreements or terms of use to their Complaint.[100]  Nor does the Complaint reference any contractual agreements between Plaintiffs' guardians and Tranont.[101]  Additionally, while Plaintiffs do allege the Products were purchased from Tranont's website,[102] the Complaint is void of any mention of the terms of use governing those purchases.[103]  The court therefore finds it may not consider the Policies & Procedures or

---

[94] *Id.* ¶ 116.

[95] *Motion* at 23–26.

[96] *Opposition* at 19–21.

[97] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citation omitted).

[98] *Smith*, 561 F.3d at 1098 (citations omitted).

[99] *Id.* (quoting *Alvarado*, 493 F.3d at 1215).

[100] *See generally Second Amended Complaint*.

[101] *See generally id.*

[102] *See id.* ¶¶ 64, 85, 97.

[103] *See generally id.*

Terms of Use provided by Tranont at this stage.[104] Thus, Tranont's argument that it disclaimed the implied warranty of merchantability necessarily fails.[105]

The court therefore denies Tranont's motion to dismiss with respect to Plaintiffs' implied warranty of merchantability claim.

## CONCLUSION

For the reasons explained above, the court DENIES Tranont's Motion to Dismiss.[106]

SO ORDERED this 5th day of May 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[104] The court notes Tranont has provided persuasive authority suggesting any disclaimers contained in the Policies & Procedures and the Terms of Use flow from the original purchasers (i.e., Plaintiffs' guardians) to third-party end users (i.e., Plaintiffs). *See Motion* at 25–26 (first citing *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 140 (Tex. 2014); and then citing *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 345 (Mich. App. 2009)). While Tranont has not provided the court with any binding Utah case law that stands for this proposition, Plaintiffs also have not offered any authority controverting it. That said, the court declines to reach the issue at this stage because it finds it may not consider the Policies & Procedures or Terms of Use.

[105] For this reason, the court also declines to dismiss Plaintiffs' claim for consequential damages at this stage because the existence of the disclaimers is Tranont's only argument for precluding such damages.

[106] Dkt. 28.