IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RIKKI JAMES, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>IMONEY TOOLS, LLC dba TRANONT, a Utah limited liability company,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00522-RJS<br><br>District Judge Robert J. Shelby |

Before the court is Defendant iMoney Tools, LLC dba Tranont's Motion for Attorney Fees (Motion).[1] For the reasons stated below, the court GRANTS IN PART and DENIES IN PART the Motion.

## BACKGROUND

Plaintiffs are twelve minors[2] who allege they were poisoned by ingestion or exposure to dietary supplements sold by Tranont that were contaminated with harmful levels of heavy metals.[3] They initiated this action on July 26, 2024.[4] They later filed a First Amended Complaint[5] and Second Amended Complaint.[6] Tranont filed a Motion to Dismiss,[7] which the

---

[1] Dkt. 87, *Motion for Attorney Fees* (*Motion*).

[2] Plaintiffs bring their claims through their guardians: Rikki James, as guardian for James Minors 1, 2, 3, and 4; Priscilla Ambundo, as guardian for Ambundo Minor 1; Esther Gonzalez, as guardian for Gonzalez Minors 1, 2, and 3; Aimee Lloyd, as guardian for Lloyd Minor 1; Cheyenne Ware, as guardian for Ware Minor 1; Mattie Allgyer, as guardian for Mattie Allgyer Minor 1; and Linda Allgyer, as guardian for Linda Allgyer Minor 1.

[3] Dkt. 27, *Second Amended Complaint* ¶ 5 ("Plaintiffs are a group of young families that were poisoned by extreme amounts of heavy metals in Tranont's product.").

[4] *See* Dkt. 1, *Complaint*.

[5] *See* Dkt. 14, *First Amended Complaint*.

[6] *Second Amended Complaint*.

[7] Dkt. 28, *Motion to Dismiss Second Amended Complaint*.

1


court denied after hearing oral argument.[8] Tranont subsequently answered the Amended Complaint and brought several counterclaims against Plaintiffs, which Plaintiffs answered in turn.[9] The case then proceeded to discovery.

Plaintiffs provide specific allegations to support their claims: for example, they allege the James Minors were diagnosed with lead toxicity,[10] Ambundo Minor 1 was diagnosed with "heavy metal toxicity,"[11] Ambundo Minor 1's guardian "was diagnosed with high amounts of toxic metals,"[12] "[a]ll three [Gonzalez Minors] underwent stool testing and heavy metal testing,"[13] and "Gonzalez Minor 3 . . . was diagnosed with heavy metal toxicity and gut dysbiosis."[14]

Since the case began, Tranont has repeatedly attempted to obtain the factual basis for Plaintiffs' allegations. On January 28, 2025, while the parties briefed Tranont's Motion to Dismiss the Second Amended Complaint, Tranont sent Plaintiffs a letter asking for documentation in support of their claims.[15] Plaintiffs responded that such a request was premature, and evidence would be provided in the normal course.[16] On August 1, 2025, Plaintiffs served their Initial Disclosures, stating they "will provide a production of documents

---

[8] Dkt. 42, *Memorandum Decision and Order*; Dkt. 41, *Minute Entry*.

[9] Dkt. 44, *Answer to Plaintiffs' Second Amended Complaint and Counterclaim*; Dkt. 45, *Amended Counterclaim*; Dkt. 46, *Plaintiff's and Counter Defendant's* [sic] *Answer to Counterclaim*.

[10] *Complaint* ¶ 51 ("The diagnosis for [the James Minors] includes lead toxicity . . . ."); *First Amended Complaint* ¶ 51 (same); *Second Amended Complaint* ¶ 48 ("The diagnosis for the James Minors includes lead toxicity.").

[11] *Complaint* ¶ 70; *First Amended Complaint* ¶ 70 (same); *Second Amended Complaint* ¶ 58 (same).

[12] *Complaint* ¶ 72; *First Amended Complaint* ¶ 72 (same); *Second Amended Complaint* ¶ 60 (same).

[13] *Second Amended Complaint* ¶ 73; *Complaint* ¶ 86 ("All three [Gonzalez Minors] underwent stool testing, and Gonzalez Minor 3 also had heavy metal testing performed."); *First Amended Complaint* ¶ ("All three [Gonzalez Minors] underwent stool testing, and Gonzalez Minor 3 also had heavy metal testing performed.").

[14] *Complaint* ¶ 85; *First Amended Complaint* ¶ 85 (same); *Second Amended Complaint* ¶ 72 (same).

[15] *Motion* at 9; Dkt. 87-1, *Declaration in Support of Motion for Attorney Fees* (*Martinez Declaration*) ¶ 12.

[16] *Motion* at 9; *Martinez Declaration* ¶ 12.

. . . which they intend to use in this matter in connection with these disclosures including medical records, images showing health impacts of the use of Tranont's products, and evidence of the payment of medical expenses."[17]

According to Tranont, the only relevant documents produced by Plaintiffs with their Initial Disclosures were dental billing records for James Minors 1, 2, and 3; a hair analysis for James Minor 1; and dental records and blood test results for Ambundo Minor 1.[18] On August 27, 2025, Tranont served discovery requests on Plaintiffs and sent a letter to Plaintiffs the next day requesting the documents identified in their Initial Disclosures.[19] At a subsequent meet-and-confer, Plaintiffs' counsel would not commit to producing those documents by a date certain.[20] On September 5, 2025, Tranont filed a Motion to Compel seeking the documents' production.[21] Plaintiffs opposed the Motion to Compel, arguing their responses to Tranont's discovery requests were not yet due and that documents supporting the allegations "will be produced."[22] According to Tranont, no such documents were ever provided.[23]

On September 18, 2025, Plaintiffs' counsel filed a Motion to Withdraw, citing "irreconcilable differences" with some Plaintiffs and "other professional considerations."[24] On October 8, 2025, the court granted the Motion to Withdraw over Tranont's objection and stayed

---

[17] Dkt. 87-4, *Exhibit C* at 6 ¶ 6.

[18] *Motion* at 5; *see also Martinez Declaration* ¶ 16. Plaintiffs also produced a chiropractor's letter and hair analysis results for Rikki James, as well as blood test results for Priscilla Ambundo. *Martinez Declaration* ¶ 16.

[19] *Martinez Declaration* ¶¶ 18–20.

[20] *Id.* ¶ 21.

[21] Dkt. 52, *Short Form Discovery Motion to Compel Plaintiffs' Production of Documents Identified in Initial Disclosures and for Expedited Consideration*.

[22] Dkt. 53, *Plaintiffs and Counter Defendants' Response to Short Form Discovery Motion to Compel Plaintiffs' Production of Documents Identified in Initial Disclosures and for Expedited Consideration* at 3–4.

[23] *Motion* at 6; *see also Martinez Declaration* ¶ 25.

[24] Dkt. 57, *Motion to Withdraw*[] *as Counsel* at 2.

the case for twenty-one days.[25]  The court also contemporaneously ordered Plaintiffs to show cause by November 19, 2025, why the case should not be dismissed for lack of subject matter jurisdiction.[26]  After new counsel appeared for James Minors 1, 2, 3, and 4, but failed to respond by the deadline set in the Order to Show Cause, the court dismissed the Second Amended Complaint without prejudice.[27]  Tranont then filed the Motion for Attorney Fees, which is fully briefed and ripe for review.[28]

## LEGAL STANDARD

The court possesses the inherent authority to preserve the integrity of judicial proceedings by punishing abuses of the judicial process through the crafting and imposition of appropriate sanctions.[29]  The Tenth Circuit instructs that "because of their very potency, inherent powers must be exercised with restraint and discretion."[30]  Central to that discretion "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process,"[31] including the assessment of attorney fees.[32]

---

[25] Dkt. 69, *Memorandum Decision and Order Granting Withdrawal*.

[26] Dkt. 70, *Order to Show Cause*.  The court issued the Order to Show Cause after Tranont pointed out that Plaintiffs computed only $85,000 in collective compensatory damages in their Initial Disclosures.  Dkt. 65, *Memorandum in Opposition to Plaintiffs' Motion for an Extension of Deadline to Respond to Defendant's First Set of Discovery* at 5 n.3.

[27] Dkt. 80, *Order Dismissing Case*.  The court also denied as moot a Motion for Sanctions filed by Tranont after the stay expired.  Dkt. 74, *Motion for Dismissal with Prejudice and Sanctions*.

[28] Dkt. 97, *Plaintiffs' Opposition to Defendant's Motion for Attorney Fees* (*Opposition*); Dkt. 99, *Reply in Support of Motion for Attorney Fees* (*Reply*).

[29] *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015) ("A district court's inherent power to sanction reaches beyond the multiplication of court proceedings and authorizes sanctions for wide-ranging conduct constituting an abuse of process." (citation omitted)).

[30] *United States v. Akers*, 76 F.4th 982, 993 (10th Cir. 2023) (citation modified).

[31] *Id.* (citation omitted).

[32] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (citations omitted).

Under the traditional "American Rule," each party "pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[33] However, under an exception to the American Rule, the court may "award attorney fees when a party's opponent acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[34] The court must "make a finding of bad intent or improper motive" before awarding fees,[35] and only fees incurred as a result of the misconduct may be awarded.[36]

The bad faith exception is construed narrowly and "resorted to only in exceptional cases . . . when there is clear evidence that challenged actions [were] taken" in bad faith.[37] It "requires more than merely a finding that a claim was frivolous when brought."[38] Bad faith is present "when the plaintiff has alleged a claim that is patently frivolous and that, like fraud, is also opprobrious by nature and designed to cause embarrassment and humiliation."[39] The bad faith inquiry looks to the party's subjective intent.[40]

---

[33] *Kornfeld v. Kornfeld*, 393 F. App'x 575, 578 (10th Cir. 2010) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).

[34] *United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000) (quoting *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984)).

[35] *Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006).

[36] *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109–10 (2017).

[37] *FDIC v. Schuchmann*, 319 F.3d 1247, 1250 (10th Cir. 2003) (citation modified).

[38] *Sterling Energy*, 744 F.2d at 1437.

[39] *Id.*

[40] *FTC v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006) (citing *Sterling Energy*, 744 F.2d at 1435).

# ANALYSIS

Tranont seeks attorney fees from the minor Plaintiffs' guardians under the court's inherent authority.[41] The court begins by examining the relevant conduct and then turns to whether it constitutes bad faith.

### I. The Court Concludes Plaintiffs' Guardian Rikki James Acted in Bad Faith.

Tranont argues Plaintiffs' guardians engaged in bad faith by (1) asserting meritless claims for improper reasons, (2) invoking the court's diversity jurisdiction without a basis to do so, and (3) failing to comply with their discovery obligations.[42] The court finds most troubling the lack of factual support for—and, in some instances, irreconcilable evidence with—Plaintiffs' allegations as well as evidence demonstrating Rikki James's improper motive in bringing this lawsuit.[43]

---

[41] *Motion* at 1. Tranont also seeks attorney fees for violations of Federal Rule of Civil Procedure 37 and under a contract between Tranont and Plaintiffs' guardians. *Id.* at 10 & n.4. Because the court awards fees under its inherent authority, it declines to address these alternative grounds.

[42] *Id.* at 1.

[43] "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover the jurisdiction amount." *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003) (citation modified). In making this determination, the court need not rely only on what is alleged in the pleadings: if evidence developed in the case satisfies the court "that the plaintiff never was entitled to recover" the jurisdictional amount, "the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (citations omitted). But where one plaintiff has satisfied the amount in controversy requirement and complete diversity exists, the court may exercise supplemental jurisdiction over additional plaintiffs' claims "even if those claims are for less than the jurisdictional amount." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005). Given several Plaintiffs' failure to provide any evidence in discovery that they suffered actual damages, Tranont's questioning of Plaintiffs' basis for invoking the court's jurisdiction is far from "baseless," as Plaintiffs put it. *See Opposition* at 6–9. But even Tranont admits it is possible that one Plaintiff could satisfy the amount in controversy requirement. *Reply* at 8. While tenuous, the court thus concludes that it is not a legal certainty that Plaintiffs could not invoke the court's jurisdiction. For this reason, the court declines to consider the diversity jurisdiction issue when evaluating the Motion for Attorney Fees.

### A. Insufficient evidence exists to support Plaintiffs' claims.

Twelve Plaintiffs asserted claims against Tranont related to harms allegedly caused by its products.[44] Of the twelve, eight failed to produce any evidence in discovery in support of their claims.[45] For example, Plaintiffs allege "[a]ll three [Gonzalez Minors] underwent stool testing and heavy metal testing,"[46] and "Gonzalez Minor 3 . . . was diagnosed with heavy metal toxicity and gut dysbiosis."[47] But Plaintiffs never produced any medical records for the Gonzalez Minors to Tranont at any point in this litigation.[48] The court is left to wonder how Plaintiffs' counsel had a basis to draft specific, detailed allegations concerning these eight Plaintiffs if indeed no evidence existed to support their claims.

Even more baffling is the existence of evidence that contradicts Plaintiffs' allegations. For example, Plaintiffs allege the James Minors were diagnosed with lead toxicity.[49] But a hair analysis conducted on James Minor 1—the only testing of the James Minors provided by Plaintiffs—indicates a lead level "in the green."[50] The court thus fails to understand how Plaintiffs had a good faith basis to allege a lead toxicity diagnosis for the James Minors when filing the pleadings. Plaintiffs further allege the James Minors "experience[d] a significant health decline" after consuming Tranont's products, which had a "devastating" impact on them "both physically and mentally."[51] But a doctor of chiropractic who treated Ms. James for years

---

[44] *See Second Amended Complaint*.

[45] *Motion* at 6 (citing *Martinez Declaration* ¶ 17).

[46] *Second Amended Complaint* ¶ 73.

[47] *Second Amended Complaint* ¶ 72.

[48] *See Motion* at 6 (citing *Martinez Declaration* ¶ 17).

[49] *Second Amended Complaint* ¶ 48 ("The diagnosis for [the James Minors] includes lead toxicity . . . .").

[50] *Sealed Motion for Attorney Fees* at 4–5 (citing *Martinez Declaration* ¶¶ 16–17, 21, 25); *see also* Dkt. 89-2, *Exhibit D* at JAMES000013.

[51] *Second Amended Complaint* ¶ 45.

concluded that the James Minors were "consistently healthy, with no history of illness under [his] care."[52]  Plaintiffs do not address this discrepancy in their Opposition, which leads the court to conclude they lacked a good faith basis to make such an allegation.

Plaintiffs also allege Ambundo Minor 1 was diagnosed with "heavy metal toxicity."[53]  The medical records produced to Tranont indicate Ambundo Minor 1 received two blood tests: the first showed an elevated lead level, but the second (taken two weeks later) showed a lead level in the normal range.  The doctor opined this discrepancy may have resulted from "contamination" at the test site or from low iron levels, which can cause increased lead absorption.[54]  While the first test perhaps provides some basis to bring a claim on Ambundo Minor 1's behalf, the court is unclear—and Plaintiffs do not address in their Opposition—how a single test result without any further comment justifies alleging that Ambundo Minor 1 was diagnosed with heavy metal toxicity.

The Second Amended Complaint alleges Ambundo Minor 1's guardian "was diagnosed with high amounts of toxic metals" on May 19, 2023.[55]  But the test results produced in discovery from that day indicate this allegation is false.  There is no evidence that a doctor diagnosed Priscilla Ambundo with "high amounts of toxic metals"; the doctor states in a note, "[t]hese all look good."[56]

In Opposition to Tranont's Motion, Plaintiffs produced additional evidence they provided to their counsel before bringing this suit, including (1) photographs exhibiting tooth decay in six

---

[52] Dkt. 89-4, *Exhibit F*.  Ms. James produced this record to Tranont in a separate action.  *Martinez Declaration* ¶ 16.

[53] *Second Amended Complaint* ¶ 58.

[54] *See* Dkt. 89, *Sealed Motion for Attorney Fees* at 5; *see also* Dkt. 89-2, *Exhibit D* at JAMES000011.

[55] *Second Amended Complaint* ¶ 60.

[56] *See* Dkt. 89-2, *Exhibit D* at JAMES000002–4.

unidentified Plaintiffs,[57] and (2) questionnaires completed by eleven Plaintiffs' guardians explaining that Plaintiffs had ingested or been exposed to Tranont's products and subsequently experienced significant health problems.[58] The court has reviewed the provided photographs and notes the signs of dental decay are obvious and severe, but it fails to understand how photographs of six unidentified Plaintiffs provide more than minimal support for the specific diagnoses and injuries alleged by Plaintiffs—as well as how those injuries are connected to Tranont.

The pattern of absent and conflicting evidence described above coupled with Plaintiffs' discovery conduct leads the court to infer that Plaintiffs' counsel at best blindly trusted the answers provided in the questionnaires while drafting the Complaint but failed to conduct any further investigation before filing suit.[59] And given the paucity of evidence provided to support their claims—especially after Plaintiffs were on notice of the specific allegations challenged by

---

[57] *Opposition* at 6; *see also* Dkt. 97-2, *Declaration of R. Jeremy Adamson in Support of Plaintiffs' Opposition to Defendant's Motion for Attorney Fees* (*Adamson Declaration*) ¶ 7 (citing Dkts. 97-10–15, *Exhibits 8–13*).

[58] *Opposition* at 6; *see also Adamson Declaration* ¶¶ 5–6 (citing Dkts. 97-3–9, *Exhibits 1–7*). Plaintiffs also argue they retained an expert, David K. Humphrey, to review laboratory test results of Tranont's products and Plaintiffs' medical records. *Opposition* at 6. Humphrey concludes "that the heavy metals found in the Defendant's products were at dangerous levels," and "there is a credible medical basis to show that Plaintiffs have experienced serious harm as a result of the exposure to the heavy metals found in Defendant's products." *Opposition* at 6; *see also* Dkt. 97-1, *Declaration of David K. Humphrey, JD* ¶¶ 49–68. In Reply, Tranont points out that Humphrey is a lawyer and businessman, not a scientist or medical doctor, who reviewed testing done in August and September of 2025—over a year after Plaintiffs brought suit. *Reply* at 3. The court find's Humphrey's conclusions irrelevant for two reasons. First, it would have been impossible for Humphrey's review to have any bearing on counsel's decision to file suit given it was conducted over a year later. Second, Plaintiffs make no argument to establish Humphrey's expertise, including why his background as an attorney and owner of a laboratory business or his methodology are sufficient to satisfy the *Daubert* test. *See Opposition*; *United States v. Hunt*, 63 F.4th 1229, 1238 (10th Cir. 2023) (providing *Daubert* factors).

[59] *Compare, e.g.*, Dkt. 97-5, *Exhibit 3* (describing how three Gonzalez Minors provided stool samples and one Gonzalez Minor also underwent heavy metal testing), *with Complaint* ¶ 86 ("All three [Gonzalez Minors] underwent stool testing, and Gonzalez Minor 3 also had heavy metal testing performed.").

9

Tranont—the court is left to conclude that no such evidence exists, and this action was frivolous from the beginning.[60]

### B. Sufficient evidence exists to conclude Rikki James acted in bad faith.

Having found Plaintiffs' guardians brought a frivolous case, the court now turns to whether they engaged in bad faith conduct. Here, there is clear evidence that at least one guardian, Rikki James, brought this case for improper reasons. Tranont has provided messages sent by Ms. James to a third party related to this suit and other cases she has brought against Tranont.[61] In those messages, Ms. James states:

- "We will see if they're even around long enough to finish this case[.]"[62]

- "Their day will come."[63]

- "I haven't showed them or released a thing on purpose."[64]

- Maybe they have better insurance than what we think they have and if they do then great otherwise I just don't wanna be the one putting the bill . . . they don't have the money to pay their lawyers."[65]

- "[W]hen we find out what kind of insurance they have if it's some sort of miracle and they actually have good insurance then we can move forward on the class action, but if they have shit insurance then . . . we know we're not gonna get any sort of payout anyway I just don't know if it's worth it[.]"[66]

---

[60] An attorney who makes baseless allegations after failing to conduct a reasonable inquiry violates Federal Rule of Civil Procedure 11. *See* Fed. R. Civ. P. 11(b). Tranont correctly notes it may not bring a sanctions motion under Rule 11 given the court has dismissed the operative pleading. *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006). And while the court may initiate a Rule 11 inquiry sua sponte, it may not award attorney fees to Tranont were it to do so. *Wright v. CompGeeks.com*, 429 F. App'x 693, 697–98 (10th Cir. 2011) (quoting *Hutchinson v. Pfeil*, 208 F.3d 1180, 1184 (10th Cir. 2000)). Under these circumstances, the court cautions Plaintiffs' attorneys who signed the pleadings that compliance with their professional obligations and the rules is mandatory to ensure the integrity of the judicial process.

[61] *See Motion* at 7–8; *see also Martinez Declaration* ¶¶ 5, 35 & Dkts. 87-10–15, *Exhibits I–N*.

[62] Dkt. 87-10, *Exhibit I*.

[63] Dkt. 87-11, *Exhibit J*.

[64] Dkt. 87-12, *Exhibit K*.

[65] Dkt. 87-13, *Exhibit L*.

[66] Dkt. 87-14, *Exhibit M*.

- "My lawyers are going to help you guys say whatever because they are yeah I mean that they're idiots."[67]

Taken together, these messages—along with the apparently false information provided to her lawyers before initiating this lawsuit and refusal to meaningfully participate in discovery—are "clear evidence"[68] Ms. James had an improper motive in bringing this action, which the court concludes was "designed to cause embarrassment and humiliation."[69] Accordingly, the court finds the bad faith exception applies and will grant Tranont's Motion with respect to Ms. James. Because Tranont has not provided any evidence relating to the subjective intent of the other Plaintiffs' guardians, the court denies the Motion with respect to them.

## II. After Adjustment, the Attorney Fees Sought by Tranont Are Reasonable.

District courts in the Tenth Circuit use the "lodestar" approach to determine the reasonableness of a request for attorney fees. To calculate the lodestar, the court multiplies (1) counsel's hours reasonably spent on the litigation by (2) a reasonable hourly rate.[70] Under this approach, the party requesting the fees—Tranont—has the burden "to prove and establish the reasonableness of each dollar, each hour, above zero."[71] Tranont must also provide evidence supporting the hours worked and the claimed rate.[72] Where this is found lacking, "the district court may reduce the award accordingly."[73] Further, while the court may only shift attorney fees

---

[67] Dkt. 87-15, *Exhibit N*.

[68] *Schuchmann*, 319 F.3d at 1250.

[69] *Sterling Energy*, 744 F.2d at 1437.

[70] *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233–34 (10th Cir. 2000); *Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-cv-00729-DN, 2019 WL 2929525, at *2 (D. Utah July 8, 2019), *aff'd*, 999 F.3d 1240 (10th Cir. 2021); *see also John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-cv-00142-RJS, 2023 WL 6164322, at *17 (D. Utah Sept. 21, 2023).

[71] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[72] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[73] *Id.*

"incurred because of the misconduct at issue," this but-for standard "permits a trial court to shift all of a party's fees" where "a plaintiff initiates a case in complete bad faith."[74]

### A. Reasonable Hours

In assessing the reasonableness of counsel's claimed hours, the court considers whether counsel has provided adequate billing records, exercised billing judgment, and spent a reasonable number of hours on each task.[75]

The fee applicant must submit to the court "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[76] Tranont's counsel from Dorsey & Whitney LLP have submitted detailed time records and billing statements.[77] Counsel's records show they spent two hundred and forty hours litigating this case.[78] Plaintiffs do not raise any specific challenges to the billing entries or any general concerns with the records' adequacy.[79] Accordingly, the court determines the hours are supported by adequate billing records.

Next, the court must ensure Tranont's counsel properly "exercised billing judgment."[80] "Billing judgment consists of winnowing the hours actually expended down to the hours

---

[74] *Goodyear Tire*, 581 U.S. at 108–11.

[75] *Webb v. County of Stanislaus*, No. 2:21-MC-00696-JNP-JCB, 2022 WL 1288857, at *4 (D. Utah Apr. 29, 2022).

[76] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

[77] *See* Martinez Declaration ¶¶ 37–63; Dkt. 87-16, *Invoices*; Dkt. 87-17, *Time Entries*; Dkt. 87-18, *Adjusted Invoices and Hours Billed*.

[78] Martinez Declaration ¶ 46; Dkt. 87-16, *Invoices*; Dkt. 87-17, *Time Entries*; Dkt. 87-18, *Adjusted Invoices and Hours Billed*.

[79] *See generally* Opposition.

[80] *Case*, 157 F.3d at 1250 (internal quotation marks omitted).

reasonably expended."[81] In doing so, counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[82]

While Tranont's counsel do not specifically address whether they exercised billing judgment,[83] the court has reviewed the billing entries and concludes the redactions are sufficient to demonstrate Tranont's counsel exercised proper billing judgment. The court next turns to the factors set forth in *Case v. Unified Sch. Dist. No. 233*[84] and *Johnson v. Georgia Highway Exp., Inc.*[85] to determine whether the resulting award is reasonable or warrants further adjustment.

First, the *Case* factors support the fees sought by Tranont. While some elements of the litigation were straightforward, there were also many complex legal and factual disputes. Most significantly, Plaintiffs' failure to meaningfully participate in discovery deprived Tranont of the ability to prepare its defense, requiring it to maneuver by filing motions seeking appropriate relief. And having reviewed the billing records, given there were so few attorneys on this case, the court finds little potential for duplication of services.

The *Johnson* factors lend further support to the reasonableness of Tranont's fee request. While the court need not discuss every *Johnson* factor,[86] several are particularly relevant here. As documented by counsel's meticulous billing records, counsel spent significant time and labor

---

[81] *Id.* (citation omitted).

[82] *Hensley*, 461 U.S. at 434.

[83] *See Martinez Declaration*.

[84] 157 F.3d at 1250 (providing four factors to analyze in the reasonableness inquiry: (1) "the complexity of the case"; (2) "the number of reasonable strategies pursued"; (3) "the responses necessitated by the maneuvering of the other side"; and (4) "the potential duplication of services").

[85] 488 F.2d 714, 717–19 (5th Cir. 1974) (providing twelve factors to analyze in the reasonableness inquiry: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorney"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases").

[86] *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

on this case over the last year and a half.  The lawyers who billed the bulk of the time charged to Tranont are experienced litigators who proved to be capable advocates.  Their meticulous attention to the record by questioning whether Plaintiffs' failed to adequately establish subject matter jurisdiction ultimately resulted in dismissal of this case.  Having considered the rest of the *Johnson* factors, the court concludes these factors either support the reasonableness of Tranont's requested fees or have little bearing on the present case.  The court therefore declines to further reduce Tranont's fee award.

### B. Reasonable Rates

The court next reviews the reasonableness of Tranont's claimed hourly rates.  As the fee applicant, Tranont has the burden to prove "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[87]  In contrast to the broad discretion generally afforded to district courts in assessing attorney fees, the Tenth Circuit cautions district courts not to "ignore[] the parties' market evidence and set[] an attorney's hourly rate using the rates [they] consistently grant[]."[88]  Moreover, courts may not use their "own knowledge to establish the appropriate rate unless the evidence of prevailing market rates . . . is inadequate."[89]

In this case, counsel charged Tranont between $330 and $695 per hour for their services.[90]  The relevant community for determining the reasonableness of counsel's requested fee is the Salt Lake City legal market, where Plaintiffs filed suit.[91]  Tranont provides the mean

---

[87] *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (1996) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

[88] *Case*, 157 F.3d at 1255 (citation modified).

[89] *United Phosphorus*, 205 F.3d at 1234 (citations omitted).

[90] *See Martinez Declaration* ¶ 52.

[91] *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (stating the relevant market consists of "the area in which the litigation occurs" or "the area in which the court sits").

standard rates for partners, associates, and paralegals according to Thomson Reuters Peer Monitor.[92] The rates charged by counsel are either below or only slightly above these mean standard rates.[93] The court concludes this market evidence, along with counsel's Declaration that the rates charged are reasonable,[94] is sufficient to establish counsel charged reasonable hourly rates based on the "skill, experience, and reputation" they brought to this case.[95]

### C. The Lodestar

The court now returns to its calculation of the lodestar, which is presumptively reasonable.[96] The court calculates the lodestar is $138,615.50.[97] However, mindful that "the amount and impact of a monetary sanction should depend on the seriousness of the violation and where the fault lies," the court finds a further reduction necessary.[98] Here, Tranont has provided sufficient evidence to demonstrate Ms. James acted with bad faith in bringing this suit. And because the case was infected with Ms. James's conduct from its inception—that is, the case would not have been brought but for Ms. James's conduct—the court finds it appropriate to shift Tranont's fees for the entirety of the litigation of this case to Ms. James. However, the court is not persuaded that Ms. James should bear responsibility for all fees sought by Tranont where she only appeared as guardian for four of the twelve Plaintiffs. To take her relative fault into

---

[92] *Martinez Declaration* ¶¶ 56–62; Dkt. 87-19, *Exhibit S*.

[93] *Compare Martinez Declaration* ¶ 52, *with Exhibit S*.

[94] *Martinez Declaration* ¶ 51.

[95] *Blum*, 465 U.S. at 895 n.11; *see also Case*, 157 F.3d at 1257 ("The quality of the lawyer's performance in the case should also be considered." (citation omitted)).

[96] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

[97] *Martinez Declaration* ¶ 52; Dkt. 87-16, *Invoices*; Dkt. 87-17, *Time Entries*; Dkt. 87-18, *Adjusted Invoices and Hours Billed*.

[98] *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990) (citations omitted).

account, the court finds it equitable to assign Ms. James one-third of the fees. Accordingly, the court reduces the lodestar by two-thirds and awards Tranont $46,205.17 in fees from Ms. James.

## CONCLUSION

For the reasons explained above, the court GRANTS IN PART and DENIES IN PART Tranont's Motion.[99]

SO ORDERED this 9th day of February, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[99] Dkt. 87.